IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VINCENT F. RIVERA, AS NEXT
FRIEND FOR U.S. ARMY SGT. JOSE
A. RIVERA,
    PLAINTIFF(S)/PETITIONER(S)

v.

PRESIDENT GEORGE WALKER BUSH, ET AL,
    DEFENDANTS—RESPONDENTS

NOTICE OF APPEAL/APPLICATION FOR A CERTIFICATE OF APPEAL-ABILITY

06-161 (GMS)

LEGAL MAIL
PROVIDED TO
FLORIDA STATE PRISON
DATE 7-7-06 FOR MAILING
INMATES INITIALS VR

FILED
JUL 14 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

NOTICE IS GIVEN THAT VINCENT F. RIVERA, PLAINTIFF-PETITIONER(S), APPEALS TO THE 3rd CIRCUIT COURT OF APPEALS, THE ORDER OF THIS COURT ENTERED ON JUNE 26, 2006. THE NATURE OF THE ORDER IS A FINAL ORDER DENYING THE MOTION TO RECONSIDER (D.I. 7). THE ISSUES PRESENTED FOR DETERMINATION ARE AS FOLLOWS.

WHETHER 28 USC § 1915(a)(1) & (2) CONSTITUTES A VIOLATION OF THE 5th AMDT. PRIVILEGE AGAINST COMPULSORY SELF-INCRIMINATION, SINCE IT ALLOWS A FEDERAL JUDGE TO IMPOSE AN "EXCESSIVE FINE," AS A "GUIDELINE SENTENCE" UNDER THE SENTENCING REFORM ACT OF 1984, 18 USC §§ 3551-3673; 28 USC §§ 991-998 (1994).

WHETHER 28 USC § 1915(g) CONSTITUTES A VIOLATION OF 5th AMDT. DOUBLE JEOPARDY PROVISO, SINCE IT DOUBLE COUNTS "RESTITUTION" IMPOSED BY A STATE COURT &/OR THE ORIGINAL STATE COURT JUDGMENT.

WHETHER THE PLRA IS (WAS) DESIGNED TO LIMIT &/OR OBSTRUCT THE PUBLIC'S KNOWLEDGE VIS-À-VIS THE PRISON INDUSTRIAL COMPLEX (STATE-TO-STATE). AND THUS, REPRESENTS THE UNREASONABLE SEIZURE OF PUBLIC PROPERTY (INFORMATION RELATING TO ADMIN. AGCY OPERATIONS & PROCEDURES).

REASONS FOR GRANTING NOA/COA.—

28 USC § 1915(a)(1) & (2) REQUIRES PRISONERS TO PROVIDE THE COURT WITH A TRUST ACCOUNT REPORT. THE SITTING JUDGE THEN DETERMINES EXACTLY WHAT DOLLAR AMOUNT A PRISONER MUST PREPAY UP FRONT, AND THE RATE AT WHICH THE PRISONER MUST RESTORE THE AMOUNT OF THE FILING FEE IN FULL. COMPARE. BRYAN V.

1.

Johnson, 821 F.2d 455, 458 (7th Cir. 1987); Tucker v. Branker, 142 F.3d 1294 (DC Cir. 1998). The PLRA was conceived to prevent inmates from creating competent records against prison officials, that would subsequently expose the prison industrial complex (public companies contracting with the prison belt)(nationwide) to liability for violations of the Sherman Act, 15 USC § 1-E6, restraint of trade, monopolization, bid-rigging, contract-steering, securities & accounting fraud, pillaging, corporate looting, profit skimming, embezzlement, tax evasion, etc. Therefore, assessing illusory filing fees against prisoners could only serve as an "excessive fine." Because matters which PLRA enforcement fraudulently conceals, such as anti-competitive behavior by companies comprising the prison industrial complex, election frauds, illegal felon disenfranchisement policy, etc., compel federal intervention whenever a prisoner is financially well off or under-privileged. Thus, requiring payment of a $350.00 filing fee (becomes illusory; and assessment of the rate of payment (installments of 20% or greater), an "excessive fine."

A fine imposed by a federal judge is not a reward. It is not a positive benefit, or a gratuity. It is a penalty. A form of sentencing, which suggests that a matter at law initiated by a prisoner, has already been adjudicated by the sitting judge, under PLRA guidelines (28 USC § 1915(g)). Simply because to impose the sentence, before the trial, typifies parochial favoritism, bias, prejudice, predilection, predisposition, unconstitutional viewpoint discrimination, and/or "judicial activism." It follows that if a federal judge is going to impose any sort of punishment on a prisoner, that judge would still be required to afford the prisoner due process and equal protection in their organic form. Rather than watered down or diluted versions. Moreover, enforcing 28 USC § 1915(g) against some prisoner litigants (those that present the greatest economic threat to the prison industrial complex or prison industry enhancement ("PIE") program), and not all, prisoners (those with unrelated claims); amounts to "selective enforcement" of state penal law by federal action. Because the PLRA applies to state prisoners, and protects private businesses illegally exercising state power to undercut corporate rivals. Clearly opening the door to political donations, kickbacks, influence peddling, bribery, and profit skimming. Thus, the practical effect of PLRA enforceability turns federal judges into an "arm of the state." Connecting the dots from the Congress to the state houses of America. But cf. Howell v. Evans, 922 F.2d 712 (11th Cir. 1991), Hale v. Arizona, 967 F.2d 1356, 1370 (9th Cir. 1992), as in "corruption in government."

By mandating compliance with 28 USC § 1915(g)(1) & (2), the PLRA ignores the 5th Amdt. ban on compulsory self-incrimination. See e.g., U.S. v. Doe, 104 S.Ct. 1237 (1984). The trust account report is testimonial in nature. It tells the trial judge everything he needs to know about a prisoner's current financial status, thereby permitting the judge to assess the rate of payment of the government's self-perpetuating fine. The idea is to make an example out of the prisoner litigant, by defeating his 4th Amdt. right to meaningful possession and use of his property or money. Compare U.S. v. Hardwell, 80 F.3d 1471, 1484 (10th Cir. 1996), with Weems v. U.S., 217 US 349, 381-82 (1910). That way other prisoners would be reluctant to file lawsuits. And thus, the PLRA blankets the states with indemnity from Sherman Act liability. Offering "some evidence" of a fraudulent scheme designed to give private companies with government backing the competitive edge. Companies like Wal-Mart Stores Inc., Rite Aid Corp., Healthsouth Corp., Hospital Corp. of America, GEO Group (a.k.a. Wackenhut Corrections Corp.), Corrections Corp. of America (CCA), Louisiana Corr. Serv., MCI, Inc., Prison Health Serv.

(PHS), ARAMARK INC (OWNED & OPERATED BY FLA. GOV. JEB BUSH), SYSCO CORP. (OWNED AND OPERATED BY PRES. GEORGE BUSH), WEXFORD HEALTH SERVICES (OWNED AND OPERATED BY FLA. GOV. JEB BUSH), CORPLAN, CARTER GOBLE & ASSOC., EMERALD MGMT., GEORGIA PACIFIC, ETC. DOUBLE JEOPARDY PROTECTION MIGHT NOT APPLY TO PRISON DISCIPLINARY PROCEEDINGS. AND THAT IS CLEARLY THE JUDICIARY'S FALLBACK POSITION. COMPARE U.S. v. NEWBY 11 F.3d 1143, 1144 (3d CIR. 1993), WITH U.S. v. BROWN, 59 F.3d 102, 104 (9th CIR. 1995). OBVIOUSLY TURNING A "JUDICIAL OFFICER" INTO AN ACTING PRISON ADMINISTRATOR (INTER, ALIA) WOULD TRANSFORM THE JUDICIAL PROCEEDING INTO AN ADMINISTRATIVE PROCEEDING. WHICH MORE OFTEN THAN NOT ALLUDES TO FAVORITISM AS AN UNDERLYING POLICY CONSIDERATION. OTHERWISE KNOWN AS "GOVERNMENT-IN-THE-SUNSHINE."

IN ADRIAN MARTELL DAVIS v. STATE OF WASHINGTON (S.CT. 6/06) AND HAMMON v. INDIANA (S.CT. 6/06) THE U.S. SUPREME COURT DEFINED "TESTIMONIAL" BY DISTINGUISHING BETWEEN STATEMENTS MADE IN EMERGENCY SITUATIONS - E.G., 911 CALLS; AND STATEMENTS RELATING TO "PAST EVENTS." 28 USC § 1915(a)(1) & (2) RELATES TO "PAST EVENTS." AND MORE SPECIFICALLY, A PRISONER'S FINANCIAL SITUATION FOR THE 6-MONTHS ANTEDATING THE LAWSUIT'S DOCKETING. THEREFORE, PLRA ENFORCEMENT CONSTITUTES A VIOLATION OF THE SIXTH AMDT.'S CONFRONTATION CLAUSE, ON TOP OF ALL ELSE. THUS, FOR THIS COURT TO REQUIRE MR. RIVERA TO PAY AN ILLUSORY FILING FEE, ONLY DEMONSTRATES THE TYPE OF INJUSTICES, USELESSNESS (PORK BARREL), AND IMMORALITY, THE PLRA PROMOTES. AN EXPLANATION FOLLOWS.

> "WE WILL NOT AGREE TO SEND ANYBODY TO A NATION OR PLACE THAT PRACTICES TORTURE."
> — WHITE HOUSE PRESS SEC'Y TONY SNOW
> (QUOTING FROM USA TODAY, JUNE 8, 2006).

PRISON DOCTORS EMPLOYED BY THE STATE FILE FALSE INVOICES WITH HEALTHCARE CONTRACTORS, AND THE DEPARTMENT OF HEALTH. OVER-PURCHASING COMMONLY PRESCRIBED MEDICINES AND SPECIALTY DRUGS (INJECTABLE FORM), FOR PRISON CLUSTER PHARMACIES. PHARMACY SPECIALISTS UNDER STATE CONTRACT - VIZ., TERRY YON & ASSOC. (A TALLAHASSEE, FLORIDA CORPORATION), MHM (VIENNA, VIRGINIA), ETC.: RECEIVE THE DRUG FORMULARIES - VIZ., MORPHINE PUMPS, FENTANYL PATCHES, OXYCONTIN, VICODIN, INDINAVIR, RITALIN, LUVOX, PROZAC, LIPITOR, ZOCOR, ZOLOFT, MYLANTA II, ZANTAC 75, TETRACYCLINE, DMERILS, 20-30 INSULIN, PULMICORT, ACTOMET PLUS, CELEBREX, VIAGRA, CIALIS, LEVITRA, GLEEVEC, VIRACEPT, VALIUM, CELEBREX, XENICAL, WELLBUTRIN XL, REMERON, COUMADIN, WARFARIN, ETC. AND REPACKAGE THEM UNDER THEIR LABELS (TYA, MHM, ETC.); IN UNIT DOSINGS (BAIT & SWITCH).

> "DRUG ADVERTISEMENTS ARE FUEL TO AMERICA'S SKYROCKETING PRESCRIPTION DRUG COSTS."
> — SEN. MAJ. LEADER BILL FRIST, R-TN.

PHARMACISTS EMPLOYED BY THE STATE (DOC), PRISON DOCTORS, AND SPECIALISTS (TYA, MHM, ETC.), PURPORTEDLY "RETURN" SURPLUS DRUGWARE TO DRUG-MAKERS, WHEN IN FACT THE SURPLUS ARMAMENTARIUM IS MAILED TO "GHOST ADDRESSES" ESTABLISHED FOR PHANTOM FIRMS (MAIL FRAUD, 18 USC § 1341). ONCE THE DRUG VOLUMES ARE MAILED BY U.S. POSTAL SERVICE, FEDEX, AND UPS, THE RECIPIENTS OF THESE MEDICINES ARE NOTIFIED - VIZ., WAL-MART STORES, INC., RITE-AID CORP., & HEALTHSOUTH CORP. AT THAT TIME THE DRUGWARE IS COLLECTED FOR REPACKAGING, RESALE, AND REDISTRIBUTION UNDER NEW LABELS. TYPIFYING CONSUMER FRAUD. TELEPHONE SERVICE IS ALSO EMPLOYED TO ADVANCE THIS SCHEME. THUS ADDING "WIRE FRAUD" TO THE LIST OF (SEE 18 USC § 1343) OFFENSES. WHAT THE PLRA DOES IS IMPEDE THE STATE AND FEDERAL GOVERNMENTS' RE-

between government officials and private corporations comprising the prison industrial complex. A scheme that concentrates on pillaging the Treasury (State-to-State), via earmarks, contractual fees, and state budget allocations. For example, in 2005, U.S. Attorney, Alice Martin, Esq. (Birmingham, Alabama) commenced an accounting fraud prosecution against former HealthSouth CEO Richard Scrushy. Mr. Scrushy was subsequently acquitted of all 36-counts after 6-months. However, the double jeopardy does not bar the state from reprosecuting the same 36-count indictment against Scrushy, based on the "dual sovereignty" doctrine. But cf. U.S. v. Cooper, 949 F.2d 737, 750-51 (5th Cir. 1991); U.S. v. Davis, 906 F.2d 829, 835 (2d Cir. 1990); U.S. v. Brocksmith, 991 F.2d 1363, 1366 (7th Cir. 1993). In other words, aside from creating the appearance of "malicious prosecution" by the state, with the U.S. Attorney's Office leading the charge, or directing traffic, there is nothing barring the state from filing charges against Mr. Scrushy (Alabama Atty. Gen. Troy King). Nonetheless, if it was the federal government's strategy to orchestrate a "sham," and thus relieve HealthSouth Corp of the inherent S.E.C. burden, by acquitting Mr. Scrushy, i.e., $2.7-Billion is still unaccounted for, which sounds more like a soft money laundering/cookie jar/war chest scam, than an accounting fraud scheme. Accord Arthur Andersen v. U.S. (S.Ct. 6/05).

The U.S. Attorney (Alice Martin), may have thwarted justice under the Petite policy. See Petite v. U.S., 361 US 529, 530-31 (1960)(per curiam). But Petite policy and the dual sovereignty doctrine go out the window like 2-1 odds in a tied ballgame, as with most gambles. The Court's "truth-finding" function and "judicial dignity" winning the bet. But cf. Kentucky v. Stincer, 482 US 730, 737 (1987). The trial judge in the Scrushy case - viz., Hon. Karon Bowdre, U.S.D.J. (ND/AL); along with the entire judicial conference, would certainly have a competing interest in maintaining the integrity of her own courtroom. If the US Attorney (Martin) enlisted Judge Bowdre's help to orchestrate the before-mentioned "sham prosecution," then certainly Mr. Scrushy's acquittal was facilitated by virtue of a "conflict of interest" between Martin's cover-up and Bowdre's sworn duty. Nonetheless, the government has an even better "second bite at the apple" than the first nibble. And, in a federal forum, no less. There is "some evidence" that pharmaceutical specialists, TYA, etc., MNM, etc., have previously conspired to violate federal antidrug policy, under the Dangerous Drug Diversion Control Act, P.L. No. 98-473, Tit. II, § 511, 98 Stat. 2073, the Comprehensive Drug Abuse Prevention and Control Act, 21 USC § 811, et seq., the Food, Drug, and Cosmetic Act, 21 USC § 355, the Generic Drug Enforcement Act, 21 USC §§ 335(a)-335(c), and the Prescription Drug Improvement and Modernization Act of 2005 (sponsored by former House Maj. Leader Tom DeLay, R-TX); by misappropriating prison pharmacy supplies, and transporting contraband drugs to HealthSouth Corp, and its subsidiaries, assigns, parents, successors, predecessors, and partners, via prison doctors and pharmacists. The use of the U.S. Postal Service and F.C.C. regulated telephone service, adds two (2) federal "RICO" counts that Ms. Martin never showcased throughout the entire Scrushy/HealthSouth investigation (1996-2002). It only takes three (3)-counts to make a "RICO" case in federal court. But cf. U.S. v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995). See also U.S. v. Mastroianni, 749 F.2d 900, 911 (1st Cir. 1984) (citing Communications Act & Wire Tap Act); U.S. v. Amato, 15 F.3d 230, 237 (2d Cir. 1994); U.S. v. Vebeliunas, 76 F.3d 1283 (2d Cir.), cert. den., 117 S.Ct. 362 (1996); U.S. v. Eshkol, 108 F.3d 1025, 1026-27 (9th Cir.), cert. den., 118 S.Ct. 120 (1997); U.S. v. Moyle, 122 F.3d 48, 51 (DC Cir. 1997); U.S. v. White, 116 F.3d 903, 930 (DC Cir.), cert. den., 118 S.Ct. 390 (1997); U.S. v. Shenberg, 89 F.3d 1461, 1479-81 (11th Cir. 1996), cert. den. 117 S.Ct. 961 (1997); U.S. v. Salerno, 108 F.3d 730, 741 (7th Cir.), 117 S.Ct. 2517 (1997). The government is not estopped from bringing relitigating new claims against Mr. Scrushy and HealthSouth or the old

NOT ONLY ARE 2-MILLION-PLUS PRISONERS IN AMERICA (STATE-TO-STATE), LEFT IN THE CARE OF PERSONS PRACTICING MEDICINE WITHOUT A LICENSE (STATE ACTORS) - I.E., PRISON DOCTORS DELIBERATELY USING THEIR FEDERAL CONTROLLED SUBSTANCE REGISTRATIONS TO FACILITATE DRUG-RELATED CRIMES, INVALIDATE THEIR MEDICAL LICENSES. SEE E.G. U.S. V. MACKENZIE, 601 F.2d 221, 222 (5TH CIR. 1979). BUT CAPITAL PRISONERS ARE BEING UNLAWFULLY AND UNCONSTITUTIONALLY EXECUTED BY UNLICENSED PRISON DOCTORS AND PHARMACISTS, IN THE 37-LETHAL INJECTION/DEATH PENALTY STATES (60 IN 2005). THE STATES THAT ENFORCE CAPITAL PUNISHMENT AND CARRY OUT DEATH SENTENCES USING LETHAL INJECTION, REQUIRE PRISON DOCTORS TO PRESCRIBE THE LETHAL DRUGS USED IN THE LETHAL INJECTION PROCESS - VIZ. SODIUM THIOPENTAL, PANCURONIUM BROMIDE, AND SODIUM CHLORIDE/POTASSIUM CHLORIDE. STATE LAWS REQUIRE PRISON PHARMACISTS TO PREPARE THE LETHAL DRUGS. AND PRISON DOCTORS OR THEIR STAFF (CLINICIANS, NURSES & ASSISTANTS) ADMINISTER THE LETHAL DOSES (2000 MG SODIUM THIOPENTAL, ETC.), TO CAPITAL DEFENDANTS. FOR THE STATES TO ALLOW UNLICENSED EMPLOYEES TO PRESCRIBE, PREPARE, AND ADMINISTER LETHAL DRUGS DURING STATE EXECUTIONS, AMOUNTS TO "TORTURE" BY STATE ACTION. DEATH PENALTY CASES ARE EXTREME EXAMPLES OF "RETRIBUTION." HERETOFORE, A MORE STRINGENT REVIEW PROCESS IS REQUIRED. BUT CF. MURRAY V. GIARRATANO, 492 US 1, 21 (1989); CLEMMONS V. DELO, 100 F.3d 1394, 1399 N.5 (8TH CIR. 1996). AND CURRENTLY, THE 37-DEATH PENALTY STATES PERPETUATE THE (SAME) CAPITAL CRIMES AS THOSE WHICH THEY EXECUTE (CONTRACT KILLING, REVENGE KILLING, RACE KILLING, ETC.). AND ONCE THE STATES OF ALABAMA, TEXAS, VIRGINIA, OKLAHOMA, GEORGIA, S. CAROLINA, N. CAROLINA, MISSOURI, AND DELAWARE, BECOME THE FIRST TO DEPLOY MOBILE EXECUTION UNITS PER FEDERAL MANDATE, THE REMAINING STATES WILL FOLLOW SUIT.

THE MOBILE EXECUTION UNIT IS A 20'-26' POLICE RV TYPE VEHICLE MANUFACTURED EXCLUSIVELY BY JINGUAN INDUS. IN CHINA, FOR THE CHINESE GOVERNMENT (PEOPLES REPUBLIC OF CHINA); FOR THE SPECIFIC PURPOSE OF EXECUTING STATE IMPOSED DEATH SENTENCES. THE PRICE OF THE "DEATH VANS" RANGE FROM $37,500 - $75K APIECE. EACH DEATH VAN IS APPROXIMATED TO REACH A SPEED OF 65 MPH - 80 MPH. IN 2005, THE CHINESE GOVERNMENT EXECUTED 1,770 PRISONERS. INCLUDING WITHOUT LIMITATION, AFFLUENT BUSINESS TYCOON YUAN BAOJING (MARCH 2006). THE INTERESTING PART IS NOT THAT CHINA, A COMMUNIST NATION WITH A COMPLETELY FOREIGN IDEOLOGY (POLITICALLY AND SOCIALLY), USES THE (SAME) LETHAL DRUG COMBO AS THE AMERICAN DEATH PENALTY STATES - VIZ., SODIUM THIOPENTAL, PANCURONIUM BROMIDE, AND POTASSIUM CHLORIDE, PER SE. BUT THAT CHINA HAS BEEN ACCUSED BY HUMAN RIGHTS GROUPS AS FOMENTING AN "ORGAN TRADE." DISSECTING EXECUTED PRISONERS FOR THEIR BODY PARTS, IN OTHER WORDS (HIGH COMMERCIAL VALUE. INTERESTING BECAUSE THE UNITED STATES GOVERNMENT'S "HUMAN EMBRYONIC/SOMATIC STEM CELL PROGRAM," DEMONSTRATES A GOVERNMENTAL INTEREST IN "TRANSPLANTABLE ORGANS - I.E. CORNEA, RETNA, IRIS, OPTIC NERVE, CONCHLEA, KIDNEY, LIVER, HEART, LUNG, ETC; EVEN BLOOD-TYPING. THE U.S. SENATE MAJORITY LEADER BILL FRIST, R-TN, IS A LICENSED CARDIOLOGIST (HEART/LUNG SPECIALIST). HIS FAMILY OWNS AND OPERATES A CORPORATION IN WHICH SEN. FRIST OWNS CONTROLLING SHARES WORTH ABOUT $25 MILLION - VIZ., HOSPITAL CORP. OF AMERICA. SEN. FRIST IS CURRENTLY UNDER FEDERAL INVESTIGATION FOR, BASICALLY THE (SAME) ISSUES THAT AROSE IN FORMER HOUSE MAJORITY LEADER TOM DELAY'S (R-TX) CASE; I.E., INFLUENCE PEDDLING, KICKBACKS, MONEY LAUNDERING, BRIBERY, ETC. WITH AN EMPHASIS ON "STOCK FRAUD." THE INVESTIGATION IS BEING CONDUCTED BY THE S.E.C. BUT WHAT IS NO LONGER A "TOP SECRET," REQUIRES "PUBLIC DISCLOSURE. AND WITH PUBLIC

disclosure comes "public scrutiny." Hospital Corporation of America receiving free prescription drugs from the Prison Belt (nationwide), just like Wal-Mart Stores, Inc., Rite Aid, and HealthSouth Corp., represents a "public concern." Illegal "summary executions" by the 37-lethal injection states represents a lost "state secret," and liability for wrongful death. See Poland v. Stewart, 117 F.3d 1094, 1105 (9th Cir. 1997). On July 8, 2006, Alabama Gov. Bob Riley will travel to China. His mission is unclear. However, promoting American business ventures, and inspecting the Jinguan death vans would -- conform to the latest diplomatic trends. See record and court file in Rivera v. Riley, et al., No. 2:06 CV 394 WKW-CSC (MD/ALA).

Florida is the lethal injection model, while Texas is the actual enforcer of "terminal sedation" policy, rather than the state of Oregon. See Rivera v. Perry, et al., SA-05-CA-200 RF (WD/TEX); Rivera v. Kulongoski, et al., No. 3:06 CV 668 HU (Dist. of Ore). In January 2006, the U.S. Supreme Court froze Florida's death penalty in the Clarence Hill case. All of the sudden the constitutionality of lethal injection is on the front burner. In California, Gov. Arnold Schwarzenegger rejected a public appeal for clemency in the case of Mr. Stanley "Tookie" Williams. Thus, there is no reason Gov. Schwarzenegger can not disclose the secret to the public, since his signatures appear on prison task order, management, and sales contracts; as well as death warrants. In 2003, it was the John Daniels execution that drew grave criticism of the lethal injection procedure. And the case of Roger Keith Coleman, in Virginia (executed), added even more controversy (2005). Thus, if the federal and state governments lost one secret, then it stands to reason they have lost others. And where lethal injection is concerned, perhaps it would be best to allow government officials to continue believing they still have a secret to protect. That way the fruit of the poisonous tree can ripen. And those that planted the tree can enjoy the fruits of their labor. These sort of decisions are entrusted to government judges, not docile prisoners. But one thing is certain. The PLRA is as useless as a rubber dinghy was in New Orleans, Louisiana on August 29, 2005.

All parties are called upon to take notice of the entry of this appeal.

Dated: 7.6.06.

Respectfully submitted,

[signature]

Vincent F. Rivera #518548
Florida State Prison
7819 NW 228th St
Raiford, FL 32026

___
2. Florida State Prison (FSP) is where state sentences are executed. FSP is operated in much the (same) way Der Fuhrer operated Bergen-Belsen, Auschwitz, Treblinka, Mauthausen, Dachau, Rawicz, Ostbann, Janwska, Trawniki, Ravensbruck, Bugvka Bulovka Hosp., etc., Holzminden, Stalag 17, Luftstalag 3, etc. Or perhaps the (same) way the Khmer Rouge and Pol Pot ran "Tuol Sleng" (a.k.a. "S-21"), in the 1970s. A "state secret" that FSP/FDOC officials refused to keep, along with their illegal drug diversion, money laundering, bid-rigging, embezzlement, antitrust schemes. Because Fla. Gov. Jeb Bush has denied FSP/FDOC staff/personnel a raise for the past 2-calendar years. And personnel are not content with their salaries



Vincent Rivera
S/S/K/?
Florida State Prison
7819 NW 228th St
Raiford FL 32026

MAILED FROM A
STATE CORRECTIONAL
INSTITUTION

Office of the Clerk
U.S. District Court
844 N. King St. Lockbox 18
Wilmington Delaware 19801-3570

LEGAL MAIL ONLY

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Sam Gibbons Building
801 North Florida Avenue
Tampa, Florida 33602-3800
(813) 301-5400
www.flmd.uscourts.gov

Sheryl L. Loesch							Alycia Marshal
Clerk									Court Operations Supervisor

DATE:	June 21, 2006

TO:	Clerk, U.S. Court of Appeals for the Eleventh Circuit

VINCENT F. RIVERA,

		Plaintiff,

-vs-						Case No. 8:06-cv-869-T-26MAP

PRESIDENT GEORGE WALKER BUSH, et al.,

		Defendants.
_____/
						U.S.C.A. Case No.: 06-13326-G

*[handwritten notation: Suitable for cross referencing purposes. xt index]*

Enclosed are documents and information relating to an appeal in the above-referenced action. Please acknowledge receipt on the enclosed copy of this letter.

- Honorable Richard A. Lazzara, United States District Judge appealed from.

- Appeal filing fee was not paid. Motion for leave to appeal in forma pauperis pending.

- Certificate of Appealability previously denied.

- Certified copy of Notice of Appeal, docket entries, Judgment and/or Order appealed from.

- There was no hearing from which a transcript could be made.

- Other Appeals:	6/9/06

					SHERYL L. LOESCH, CLERK

					_s/ Marlene Kerley_____
			By:	Marlene Kerley, Deputy Clerk

Enclosure(s)

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _____

TO: (Check One)
☐ Warden  ☐ Asst. Warden  ☐ Classification  ☐ Security  ☑ Medical  ☐ Dental  ☐ Other

FROM:
Inmate Name: Vincent Rivera
DC Number: 58548
Quarters: C1318
Job Assignment: Cl Mgmt
Date: 7-3-06

REQUEST: Informal Grievance

Okay so now Prison Health Care Services (PHS) took over where Wexford left off. $792-million for 10-years to 2016. Connecting the dots from PHS 110 contracts in (37-states) (16 death penalty states), to the governorships in those states, and majority shareholders in public office, won't be too complicated. PHS is headquartered in Nashville, Tennessee. PHS oversees the illegal prescribing, preparation, and forced administration of lethal injection drugs, viz. sodium thiopental, pancuronium bromide and sodium chloride/potassium chloride. The staff at FSP pointed the way right to U.S. Sen. Maj. Leader Bill Frist, R-Tenn., and the Tennessee Republican party boss Beth Hardwell — all the House Maj. leader Tom DeLay, R-Tex, and TRMPAC were violating F.E.C. guidelines. Then the Sen. Maj. leader was doing it too. And PHS is right at the heart of it. $792-million in taxpayer funds is a good little amount to be kickback to gov't officials w/no legitimate penological interest in PHS' 10-year contract. Corresponding response required.

DATE RECEIVED: JUL 0 3 2006  RECEIVED  FSP MEDICAL DEPARTMENT

---

You have ONLY made personal statements herein. What is your medical concern?

ENTERED ON OBIS

[The following pertains to informal grievances only:
Based on the above information, your grievance is **denied**. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Signature): C.B. Bowlan, SHSA    Date: 7/5/06

Distribution: White - Returned to Inmate   Pink - Retained by official responding, or if the response is to an
             Canary - Returned to Inmate         informal grievance then forward to be placed in inmate's file.

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

RECEIVED
JUN 26 2006
Dept. of Corrections
Inmate Grievances

TO: ☐ Warden   ☐ Assistant Warden   ☑ Secretary, Florida Department of Corrections

From: Rivera   Vincent         578548        FSP
      Last    First  Middle Initial   Number     Institution

06-6-17491

### Part A – Inmate Grievance

Yeah well, the only problem is that FSP/FDOC's illegal pharmacy diversion scheme, with all the white shirts at FSP roadguarding for higher ups violates federal law. For instance, FDOC pharmacists have to prepare the lethal injection drugs for state executions. If they invalidate their licenses by engaging in state drug law violations under the pharmacy act, § 465.031 F.S. and federal statutes also (21 USC §§ 335, & 821), then they prepare the lethal injection drugs (sodium Thiopental, Pancuronium Bromide, and sodium chloride) in violation of § 33-601.901 F.A.C. Because the intent to facilitate drug related crimes invalidates their licenses. FSP/FDOC and Gov. Jeb Bush carry out the state executions with illegally mixed, prepared and administered drugs, under the governors own signatures, per pharmaceutical contracts, and death warrants (§922.052 FS). And that spells wrongful death liability. And it goes all the way to the majority shareholders of pharmaceutical houses, who happen to be in public office. Usually when their term limits expire they go to work for those mega corporations. So the evidence is concrete. None the less, the drug diversion operation violates the federal Death Penalty Act, 18 USC § 3591-98. That's why the feds also suspended Florida's death penalty. No real reason anyway. But also smells like a fishy odor that the FBI and friends are trying to cover up on behalf of Wal-Mart stores inc and Rite aid corp. So all the white shirts at FSP subjecting me to abusive treatment is consistent with illegal policy enforcement under Bush's signatories (Final approval) - ie torture. Because a deliberate violation of federal antidrug policy by prison doctors invalidates their M.D. licenses and leaves inmates under the care and supervision of persons practicing medicine w/o a license. Corrective action is required. Because a wartime president might not be bound by federal antitorture laws. But a state certainly is.

6-22-06                    SEE ATTACHED           QQ 578548
DATE                       RESPONSE               SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: ___/___
                                                                        #   Signature

INSTRUCTIONS               BoMix 205

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance then he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____
                          (Date)                                        (Received By)

DISTRIBUTION:  INSTITUTION/FACILITY        CENTRAL OFFICE
               INMATE (2 Copies)           INMATE
               INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY
               INSTITUTIONAL GRIEVANCE FILE CENTRAL OFFICE INMATE FILE
                                           CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Revised 2/05)       205060632206

MAILED / FILED
WITH AGENCY CLERK

JUN 3 0 2006

Department of Corrections
Bureau of Inmate Grievance Appeals

PART B - RESPONSE

| RIVERA, VINCENT | 518548 | 06-6-17491 | (205) FSP - MAIN UNIT | C1318S |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | GRIEVANCE INSTITUTION | HOUSING LOCATION |

Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule resulting in your appeal to this office being in non-compliance.

Your request for administrative appeal is being returned without action.

J. Adams

_____    Jackie Adams    6/28/06
SIGNATURE AND TYPED OR PRINTED NAME    SIGNATURE OF WARDEN, ASST. WARDEN, OR    DATE
OF EMPLOYEE RESPONDING    SECRETARY'S REPRESENTATIVE

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

\* see Rivera v. Alberto Gonzales, U.S. Atty Gen., case no. 1:05 CV00246 TSE (ED/VA), 4th Cir no. 06-6895 (pending)